Saul S. Streit, J.
This is a petition by the Superintendent of Insurance dated February 26, 1971, for an order terminating the rehabilitation proceeding of Citizens Casualty Company of New York, and directing the Superintendent of Insurance and his successors to take possession of the property, and to liquidate the business and affairs of Citizens Casualty Company of New York.
The application alleges that on March 23, 1970, the Appellate Division, First Department, ordered the Superintendent of Insurance to take possession of the property of Citizens Casualty, and directed him to rehabilitate Citizens Casualty. The Court of Appeals affirmed on August 10, 1970, when the Superintendent of Insurance took possession of the property of the respondent. (Matter of Stewart v. Citizens Cas. Co. of N. Y., 34 A D 2d 525, affd. 27 N Y 2d 685.) Thereafter, the respondent applied to the Supreme Court of the United States for a writ of certiorari, which application was denied on February 22,1971.
It is alleged that the petitioner has conducted the business of the Citizens Casualty since August 10, 1970; that continued examinations into the financial condition of Citizens Casualty conducted by the examiners of the Superintendent of Insurance confirmed that the insolvency of December 31, 1968, found by the Appellate Division, First Department, in its order of rehabilitation dated March 23, 1970, in- a minimum amount df $5,260,693.46, has not been corrected or improved, and that the financial condition of the respondent has further deteriorated since that date.
*813 The petitioner further alleges that, in an effort to rehabilitate the respondent, it has consulted with representatives of various insurance companies, and Ithat among other efforts, petitioner addressed a communication to 392 insurers licensed to transact business in this State. It is alleged that after a full consideration of the foregoing, the petitioner has concluded that further efforts to develop a program for rehabilitation would be futile; that further transaction of the respondent’s business would further the deterioration of its affairs, and that in the opinion of the petitioner, it is in the best interests of all concerned that rehabilitation proceedings of Citizens Casualty be terminated, and that an order of liquidation be entered.
The application for respondent’s liquidation is made upon the grounds:
1) That respondent is insolvent.
■ 2) It has been found, after examination, to be in such condition that further transactions of its business would be hazardous to its policyholders, its creditors and to the public.
3) That respondent has failed to comply with an order of petitioner to make good an impairment of its capital, and
4) That all efforts to rehabilitate the company have been futile.
The respondent Citizens Casualty Company has, in the main, denied that it is insolvent, and has denied that the Insurance Department has made every effort to rehabilitate this company. It has denied that it has failed to supply the additional capital, and denied that it would be hazardous to continue.
Citizens Casualty has interposed four separate defenses, two of which I have already dismissed, the second and third defenses. I reserved decision on this motion to dismiss, with respect to the remaining two defenses.
The first separate defense alleges that the petitioner has failed to comply with the requirements of section 512 of the Insurance Law; among other things, petitioner has failed to take such steps toward the removal of the causes and conditions which made rehabilitation necessary as the court directed.
I find, from the facts and the testimony before me, that the petitioner, the Superintendent of Insurance, has made every effort available to him, and every effort to rehabilitate this company that it was possible to make. There is no testimony in this case from any source that any other effort could have been made, or that the Superintendent could have done any other thing or any more than he has done.
There were several attempts to adjourn these proceedings for the purpose of making a survey, and of making an offer to *814 rehabilitate this company. I directed one informal hearing to be held before the Superintendent of Insurance, and the minutes of March 15, 1971, disclose the result of that meeting. They do not indicate any sincere offer by anyone, including Mr. Friedlander and Exeter International Corporation.
At the beginning of these proceedings there was another request made by Exeter, and the attorneys for Citizens Casualty, that Exeter be permitted to make a spot check at the offices of Citizens Casualty to ascertain and determine whether it wished to make an offer to rehabilitate or take over this company. This request was granted. On May 10, 1971, I received a plan of rehabilitation of Citizens Casualty as submitted by Exeter International Corporation, to whom I extended the benefit of the doubt as to whether they had any standing whatever in these proceedings.
The only thing before me was that they had an agreement to purchase the stock of Citizens Casualty. Nonetheless, I permitted them to make the spot check. This report, or this plan of rehabilitation to me is the most farcical thing I have ever seen in a serious enterprise, or in the administration of a proceeding of this magnitude before a court of law.
In effect, Exeter tells us that for $170,000, it will presume to operate this company — by what authority the court, or anybody else could permit it to do such a thing I do not know — and then, after a year’s operation under its supervision, they may make an offer. The first defense is dismissed.
The fourth defense alleges that an attempt to formulate a plan of rehabilitation has been made by Exeter for the respondent, but petitioner has improperly refused to furnish certain required financial information to Exeter, or to give consideration to any plan to be formulated by Exeter. In the first place, Exeter has withdrawn from this case; so have the attorneys withdrawn. I have permitted them to withdraw, and reserved decision on whether to direct a judgment against Exeter, who appeared in this case. Every opportunity was given by me to Exeter and to Citizens Casualty to present whatever evidence they could obtain, and whatever, plan they wished to present to this court, and to formulate a plan of rehabilitation to this court. At this juncture I find they have come up with zero. The fourth defense is dismissed.
I find that Citizens Casualty, as was decided by the Appellate Division, was insolvent to the extent of $5,269,693.46 as of December 31,1968. I find, as a matter of law, that as of August, 1969, by reason of the pleadings, that the respondent Citizens Casualty was insolvent in that it had failed to prove its solvency at any *815 time within the meaning of the judgment and decision of the Appellate Division, and the order of March 23, 1970.
I find from the testimony before me that, as of December 31, 1970, Citizens Casualty was insolvent to the extent of $6,697,904.72. On cross-examination, and on direct examination, there was evidence to the effect that the punch cards of the company indicated a reserve deficiency of $4,713,767. With some variations in credits, that was reduced to a reserve deficiency of $4,194,958. As against this, by reason of the method used to ascertain the development of loss reserves, as contended by the petitioner, the Insurance Department, we find that there was a loss reserve deficiency of $8,709,170, plus a net reinsurance assumed liability of $1,250,856, plus an allowance for reopenings and other claims of $870,000, making a total reserve deficiency of $10,830,026 as of December 31, 1970. This, coupled with loss adjustment expenses and contingent claims and other expenses, together with the additional items referred to in Chief Insurance Examiner Rosenberg’s testimony, and more particularly on his balance sheet of December 31, 1970, indicated liabilities of $14,615,391.50, as against assets in the sum of $7,915,476.96, arriving at the deficit or insolvency figure of $6,697,000 I just referred to. It is to be noted that there was no dispute between the parties as to the amount of admitted assets or the amount of liabilities, other than the deficiency reserve of $10,830,026.
In addition, it is not denied that the respondent has not complied with the demand of the Insurance Department as of April 23, 1968, to repair its deficiency in surplus and capital, nor has it been controverted here, or disputed, nor has any testimony been offered that as of today, there is no surplus and no capital in this company. It requires at least $1,500,000 in surplus, as demanded by the statute, and an additional $3,500,000 if they are to resume business as heretofore transacted. This would bring the total amount of deficiency or capital required to resume the business of well over $11,000,000.
Respondent sought to make much of the fact that in the development of loss reserves, petitioner failed to take into account some 2,042 claim files which could not be located or accounted for. (That is, there were 9,428 claims outstanding as of December 31, 1968; a tabulation of outstanding claims as of December 31, 1970, reflected 5,739, while petitioner’s examiners could only account for settlement or other disposition of 1,647 claims).
Petitioner established, however, that there was a reserve projected for these missing files, reflected in the provision of $870,000 for “ additional and reopened” claims referred to above. This reserve provision was deemed to be quite conser *816 vative, in view of the fact that petitioner’s examiners did eventually locate 60 of these unaccounted for files, and discovered that no reserves whatever had been set for them, and these had been settled for a total of $225,630.16. Moreover, the reserve deficiency figure of $10,830,026 urged by petitioner, and that of $4,713,767 urged by respondent, were both based on the indentifiable total of some 5,700 outstanding claims. Since the 2,000 unaccounted for claims were unreserved, the possible disposition of all of them without loss to the company could not improve the company’s financial picture. The other alternative, resolution of some or all of said claims with net losses to the company, could only worsen the financial picture.
Indeed, even accepting respondent’s argument that the deficiency reserve of $4,713,767 set by the company against the accounted for outstanding claims is adequate, and that petitioner’s projection of loss reserves should be discounted, the evidence presented still established that respondent would require an additional $5,000,000 before it could begin to sell insurance again. Neither respondent nor anyone else has come forward with a firm offer to infuse such additional funds into the company, and it remains hopelessly insolvent.
To repeat, after a full hearing, I find:
1) That the company was insolvent as of December 31, 1970, to the extent of $6,697,904.72.
2) I find that Citizens Casualty and its officers and directors have failed to comply with the request of the Superintendent of Insurance to repair the impairment of capital, or infuse any capital whatever, since the letter of April 23, 1968.
3) I find also that it would be futile for the Superintendent of Insurance to continue this rehabilitation.
4) I find that it would be hazardous to the policyholders, to the stockholders and to the public, to continue this company.
5) I find that all efforts to rehabilitate the company have been futile.
Settle order and judgment. Respondent has an exception to all said findings.